Penny L. Koepke
pkoepke@hoalaw.biz
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Telephone (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff* DEBORAH SCHICK
and the Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Deborah Schick,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **JURY TRIAL DEMANDED** |
| **FreeRateUpdate.com, LLC,** a Nevada Limited Liability Company, and **Home Mortgage Alliance Corporation d/b/a American Bay Financial**, a California Corporation, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

1.      Plaintiff Deborah Schick ("Schick" or "Plaintiff") brings this Class Action Complaint against Defendants FreeRateUpdate.com, LLC ("FRU") and Home Mortgage Alliance Corporation d/b/a American Bay Financial ("American Bay" or "HMAC") (collectively, FRU and American Bay/HMAC are referred to herein as the "Defendants") to: (1) stop Defendants' practice of placing calls using an automatic telephone dialing system ("ATDS") to the telephones of consumers nationwide without their prior express consent; and (2) obtain redress, including statutory damages, for all persons injured by Defendants' conduct. Plaintiff also

1

seeks an award of pre- and post-judgment interest, court costs, and reasonable attorneys' fees.

2.      Plaintiff, for her complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

3.      The Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* and its implementing regulations, 47 C.F.R. §64.1200, *et seq.* ("TCPA"), prohibit companies, such as Defendants, from placing calls using an ATDS ("autodialed calls") to cellphones without first obtaining consent.

4.      Defendants have violated, and continue to violate, the TCPA by placing autodialed calls to telephone subscribers who have not expressly consented to receiving such calls.

5.      In an effort to obtain leads for their services, Defendants made (or had made on their behalves) autodialed calls to the telephones of Plaintiff and other members of the Class without first obtaining express consent to do so—all in violation of the TCPA.

6.      The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint—autodialed calls placed to cellphone numbers without each consumer's prior express written consent.

7.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury, including the aggravation, annoyance, nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interrupted and interfered with Plaintiff's and the other Class

members' use and enjoyment of their cellphones and diminished their ability to use and enjoy their phones' related data, software, and hardware components. Defendant also caused substantial injury to the Class Members' phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes and data.

## PARTIES

8.      Plaintiff Schick is a natural person over the age of eighteen (18) and a citizen of the State of Arizona. Schick resides in Maricopa County.

9.      Defendant FRU is a Nevada limited liability company with its principal place of business located at 5 Christy Drive, Suite 204, Chads Ford, Pennsylvania 19317.

10.     Defendant HMAC is a California corporation located at 4 Hutton Centre Drive, Suite 500, Santa Ana, California 92707.

## JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. §227, *et seq.*, a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

12.     This Court has personal jurisdiction over FRU because it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. FRU directed calls to consumers, including Plaintiff, who live in this District.

13.     This Court has personal jurisdiction over HMAC because it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Acting on HMAC's behalf and for HMAC's benefit (and with HMAC's knowledge and approval) FRU directed calls to consumers, including Plaintiff, who live in this District.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants solicit a significant amount of consumer business within this District and because a portion of the wrongful conduct giving rise to this case occurred in and was directed to cellphone consumers in this District.

## COMMON ALLEGATIONS OF FACT

15.     Defendant FRU is a licensed mortgage broker. FRU makes unsolicited calls consumers to generate "leads"—packets of information and data regarding potential mortgage customers (*i.e.*, consumers who may be interested in obtaining a mortgage loan). Defendant FRU sells its leads to other mortgage brokers, including to Defendant HMAC.

16.     On information and belief, FRU called consumers for the express purpose of selling them a mortgage loan from Defendant HMAC.

17.     Defendant HMAC knew that FRU was calling consumers on HMAC's behalf for the purpose of selling the leads to HMAC.

18.     FRU would perform "warm transfers" of consumers to HMAC. That is, FRU would place an unsolicited call using an automatic telephone dialing system and, once the person called confirmed they would like more information, FRU would live, in real time, transfer the consumer to an agent at HMAC, who would then proceed to try and sell the consumer an HMAC mortgage loan.

4

19.     Unfortunately for consumers, Defendants cast their marketing net too wide. That is, in an attempt to promote their business and to generate more leads, Defendant FRU, acting on HMAC's behalf, conducted a wide scale telemarketing campaign that repeatedly makes unsolicited autodialed and/or pre-recorded calls to consumers' cellular telephones, all without any prior express consent to make these calls.

20.     While Autodialed Calls placed with prior express written consent do not violate the TCPA, Defendants placed the calls at issue here using an ATDS without any prior express consent at all.

21.     Prior to filing this lawsuit Plaintiff asked Defendant to provide proof or evidence of any prior express consent. Defendant HMAC stated that FRU made the calls, and that it has since terminated FRU, but HMAC failed to provide any proof of consent.

22.     Put simply, at no time did Defendants obtain prior express consent from the Plaintiff or any other members of the proposed Class orally or in writing to receive the autodialed calls at issue here.

23.     In making the phone calls at issue in this Complaint, Defendants utilized an ATDS. Specifically, the hardware and software used by Defendant FRU and/or its agents has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

24.     Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously, without human intervention.

25.     Defendants knowingly made autodialed telemarketing calls without the prior express consent of the recipients. As such, Defendants not only invaded the

personal privacy of Plaintiff and members of the Class, they also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF

26.     Plaintiff Schick is the subscriber to and customary user of the personal cellular telephone ending in the last four digits 6535.

27.     On or about January 21, 2020 Plaintiff received a phone call from (925) 735-2102 which, on information and belief, is a spoofed phone number owned or operated by Defendant FRU.

28.     When Schick answered, she was met with dead air. Schick said "hello" several times to no response before hearing a "click" and connecting to a live representative, indicating that the phone call had been autodialed.

29.     Plaintiff was first connected to a representative of FRU named "Eddie" or "Edie" who then performed a "warm transfer" of Plaintiff's call to Defendant HMAC. Schick asked for an email. Eventually representatives of HMAC emailed Plaintiff Schick.

30.     Plaintiff does not have a relationship with either Defendant, has never provided her telephone number to either Defendant or to any other person for the purpose of receiving calls by or on behalf of either of the Defendants, and has never requested that either Defendant place autodialed calls to her or offer her their mortgage loans (or any other services). Simply put, Plaintiff has never provided any form of prior express written or oral consent to Defendant to place autodialed calls to her and has no business or other relationship with either Defendant.

31.     Defendants were and are aware that the above described autodialed calls were made to consumers who, like Plaintiff, never consented to receive them.

32.     By making unauthorized autodialed calls as alleged herein, Defendants have caused consumers actual harm. This includes the aggravation, nuisance and

6

invasions of privacy that result from the receipt of such calls in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendants made the calls knowing that they interfered with and interrupted Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their cellphones, including all related data, software, and hardware components.

33.     To redress these injuries, Plaintiff, on behalf of herself and Classes of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited autodialed calls to telephones. On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unauthorized autodialed calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## **CLASS ACTION ALLEGATIONS**

34.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the date notice is sent to the Class: (1) Defendants called; (2) on the person's cellular telephone; (3) using the same equipment that was used to call the Plaintiff; (4) for the purpose of potentially marketing or selling HMAC's products and services; and (5) for whom Defendants claim they obtained prior express consent to call in the same manner as Defendants claim they supposedly obtained prior express consent to call the Plaintiff.

35.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which

7

the Defendant or its parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the Class definitions following confirmatory discovery regarding the equipment used to make the calls, the purpose of the calls, and any supposed consent Defendants claim was obtained.

36.     **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed pre-recorded calls to thousands of consumers (or more) who fall into the defined Class. However, the exact number of members of the Class can be identified through reference to objective criteria, including Defendants' business records and dialer reports.

37.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct. Plaintiff is a member of the Class.

38.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to or in conflict with those of the Class, and Defendants have no defenses unique to Plaintiff.

39.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether Defendants systematically made telephone calls to individuals who did not provide Defendants with their prior express written consent to receive such phone calls;

(c)     Whether Defendants made the calls with the use of an ATDS; and

(d)     Whether Defendants' violations were knowing or willful so as to entitle members of the Class to treble damages.

40.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct.

41.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication,

economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
#### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
#### (On behalf of Plaintiff and the Autodialed No Consent Class)

42.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

43.    Defendant FRU made unsolicited and unwanted telemarketing calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class—without their prior express written consent—in an effort to generate leads for Defendants' mortgage loans.

44.    Plaintiff reached out to Defendant HMAC prior to filing this lawsuit. During those discussions, HMAC revealed that it received the lead for Plaintiff (and a warm transfer) from Defendant FRU.

45.    FRU made the calls on behalf of, for the benefit of, and with the full knowledge and approval of Defendant HMAC. Defendant HMAC knew about the calls, ratified the making of the calls, and knowingly received the benefits of the calls.

46.    Defendants failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47.    Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or

sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendants utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

48.     By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

49.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

50.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Deborah Schick, on behalf of herself and the Classes, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff Schick as the representative of the Class, and appointing her counsel as Class Counsel;

B.     An award of statutory damages in the amount of five hundred dollars ($500.00) for each violation, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C.     An order declaring that Defendant's actions, as set out above, violate the TCPA and appropriate injunctive relief;

11

D.  An award of pre- and post-judgment interest;

E.  An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

F.  Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: May 18, 2020          **DEBORAH SCHICK**, individually and on behalf of all others similarly situated,

By: /s/      Penny L. Koepke
            One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalaw.biz
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Telephone (480) 833-1001

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Stephen A. Klein*
sklein@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class

* *Pro Hac Vice* admission to be sought

12